**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
────────────────────────────────

**ROBERT JONES,**

                    **Petitioner,**          **07 Civ. 454 (JGK)**

          **- against -**          **MEMORANDUM OPINION**
                                   **AND ORDER**

**WILLIAM D. BROWN, SUPERINTENDENT OF**
**EASTERN NEW YORK CORRECTIONAL FACILITY,**

                    **Respondent.**
────────────────────────────────

**JOHN G. KOELTL, District Judge:**

     This is a petition for habeas corpus pursuant to 28 U.S.C.
§ 2254, brought by Robert Jones (the "petitioner"), who was
convicted of two counts of assault in the first degree in
violation of New York Penal Law § 120.10(3), following a jury
trial held in New York State Supreme Court, Bronx County.
Judgment was entered on July 13, 2004.  The petitioner is
currently serving a sentence of two determinate concurrent terms
of fifteen years on each count in the Eastern New York
Correctional Facility.  The respondent is William D. Brown,
Superintendent of the Eastern New York Correctional Facility.

     The petitioner challenges his conviction on three grounds.
First, he asserts that the People failed to prove the petitioner
guilty of depraved indifference assault on Leon Burton.  Second,
the petitioner claims that the trial court erred when it allowed
a jury to reach its verdict before it responded to two jury
notes.  Third, the petitioner argues that the trial court erred

1

in sua sponte dismissing a prospective juror.  For the reasons
that follow, the petition for habeas corpus is **denied**.

**I.**

**A.**

The evidence at trial was sufficient to find the following.
On August 30, 2001, at around 1:30 or 2:00 a.m., George Bennett,
Leon Burton, Tommy Bennett, and Ted Tyson were gathered on the
corner of 174th Street and Longfellow Avenue in the Bronx.  (Tr.
3-4, 146, 425, 457, 564.)  George Bennett was leaving town for a
promotion he had received to assistant manager of an Applebee's
restaurant in Virginia, and the young men had been having drinks
to celebrate.  (Tr. 3-4, 455, 457-58.)  Two young women, Kellea
Walters and Cherice, passed by and stopped to talk with the men.
(Tr. 4, 146.)  Some of the men began to make comments about the
provocative nature of Cherice's clothing, which caused Kellea
Walters to become angry.  (Tr. 146-47.)  Kellea Walters, who
knew George Bennett, began to argue heatedly with him, cursing
and yelling loudly at him and waving her hands in his face.
(Tr. 5, 84, 90-91, 147.)  George Bennett then threw his drink –
orange juice and Jamaican rum – in Kellea Walters' face.  (Tr.
5, 427.)

Irate, Kellea Walters threatened George Bennett that she
was going to get her boyfriend, the petitioner, to "F" him up,
and left the scene for her nearby home.  (Tr. 5, 85-87, 90, 93-

95, 148-49, 203-09, 564-66.)  At her house, she grabbed a gun allegedly belonging to the petitioner from underneath her bed, placed the gun in the waistband of her pants behind the small of her back, and beeped the petitioner.  (Tr. 148-50, 893.)  When the petitioner called her back, she told him about George Bennett and the drink and said she "was ready to go outside and do something real stupid."  (Tr. 150, 893.)  The petitioner told Kellea Walters to calm down and to stay in the house, but she instead returned to Longfellow Avenue.  (Tr. 150, 893-94.)

Back at Longfellow Avenue, the petitioner, his cousin Keenan, and several other young men pulled up in cars just as George Bennett, Leon Burton, Tommy Bennett, and Ted Tyson were coming up the street.  (Tr. 8, 150-52.)  The men got out of the cars, and Kellea Walters pointed George Bennett out to the petitioner as the one who had thrown a drink in her face.  (Tr. 151-52.)  The petitioner approached George Bennett, and a heated argument ensued.  (Tr. 8, 152, 629, 702, 704, 811-13.)  Threats were made, and the two appeared poised for a fight.  (Tr. 152-53, 432, 896.)  Keenan said something to the effect of "all this over a bitch," and then "F--- this, we out."  (Tr. 152, 577, 813, 897.)  Keenan then began to walk away from where George Bennett and the petitioner were still standing.  (Tr. 577, 614.)

George Bennett, the petitioner, and the other men on both sides also began to back off, and it appeared to witnesses as if

3

a fight had been averted.  (Tr. 434-35, 481, 483, 577-78, 614-15.)  Kellea Walters, however, continued to yell at George Bennett, who then insulted her back.  (Tr. 10, 435, 589-90, 897.)  Finally, Kellea Walters shouted to the petitioner that "something's gotta be done."  (Tr. 435.)  The petitioner then reached behind Kellea Walters' back, grabbed the gun, and began firing shots down Longfellow Avenue.  (Tr. 10-11, 437.)  George Bennett and the others began running away.  (Tr. 15, 153.)  According to the testimony of the various witnesses, the petitioner fired between two and four shots, one of which hit George Bennett in the back of his knee.  (Tr. 10, 14, 153-54, 438, 505-06, 578, 630, 814, 899.)  Another bullet struck Leon Burton in his right shoulder.  (Tr. 437-38.)  Witnesses to the shooting testified that upon being hit, Leon Burton took a few steps, grabbed a pole, and crumpled face down on the street. (Tr. 154, 437, 485-86.)  Leon Burton testified that he remembered hearing two shots and getting hit in the shoulder, and that he did not remember anything after that point.  (Tr. 438-39, 485.)  Kellea Walters testified that after Leon Burton fell to the ground, he did not appear to move.  (Tr. 163-64.)

    Then, without explanation, Keenan took the gun from the petitioner, walked over to where Leon Burton was lying on the street, and fired a number of shots into his prone body.  (Tr. 154, 901.)  One of the police officers who arrived at the scene

4

after the shooting testified that he found Leon Burton laying

face down. (Tr. 370.) Underneath Leon Burton's body, the

officer found two shell casings and two bullets. (Tr. 374-75.)

Witnesses to the shooting testified that Keenan shot Leon Burton

between three and five times. (Tr. 154, 631, 814, 901.)

According to Dr. Verrier, the trauma surgeon who attended

to Leon Burton, Burton suffered multiple gunshot wounds to his

neck, his right arm, the area under his right shoulder, his left

shoulder, the right side of his abdomen, the left side of his

abdomen, and his left groin. (Tr. 494.) Dr. Verrier estimated

that he had two bullets and nine holes in his body, although he

could not tell which of the holes were entry or exit wounds.

(Tr. 495, 538.) Dr. Verrier testified that it was the bullet

that entered the right side of his abdomen and lodged itself

inside Burton's second lumbar vertebra, located in his lower

back, that caused Burton's paralysis. (Tr. 496-98, 529-30.)

This bullet entered Burton's abdomen from the front, traveled

back through his kidney, and then lodged inside his vertebra.

(Tr. 531.) Dr. Verrier also testified that either the shot to

the right side of his abdomen or the shot to the area below his

right shoulder were the most likely causes of his initial

collapse, though it was possible that any one of the wounds

Burton sustained could have caused him to fall down. (Tr. 530-

32, 538.)

Soon after the shooting, the police and ambulance arrived on the scene, and George Bennett and Leon Burton were taken to the hospital where both underwent surgery.  George Bennett's wound in his knee cut off the blood supply to his foot and, at the time of the trial, resulted in decreased sensation in the lower half of his left leg, which caused him to develop ulcers in his left foot.  (Tr. 17, 506-09.)  Leon Burton spent six weeks at the hospital, two years at a nursing home, and at the time of the trial, was paralyzed and could not walk on his own. (Tr. 440-42.)

Kellea Walters turned herself into the police the next day, but the petitioner remained at large for seven months.  He was arrested at a routine traffic stop and tried in Supreme Court, Bronx County.  The jury acquitted the petitioner of two counts of attempted murder in the second degree, and two counts of assault in the first degree, but found him guilty on Count Three, depraved indifference assault in the first degree with respect to George Bennett, and on Count Eight, depraved indifference assault in the first degree with respect to Leon Burton.  (Tr. at 1412-14.)

**B.**

The petitioner appealed his conviction to the New York State Supreme Court, Appellate Division, in June 2005.  In addition to the three arguments raised in this habeas petition,

6

the petitioner asserted that the imposition of a DNA databank
fee under the state statute violated the Ex Post Facto Clause of
the United States Constitution because the petitioner committed
the crime prior to the effective date of the legislation.  In an
opinion dated January 12, 2006, the Appellate Division
unanimously agreed that the DNA databank fee should not have
been imposed, but affirmed the decision of the trial court with
respect to the remaining arguments.  People v. Jones, 806
N.Y.S.2d 416 (App. Div. 2006).

In letters dated February 2, 15, and 27, 2006, the
petitioner sought leave to appeal the Appellate Division's
decision to the New York Court of Appeals. (Resp.'s Exs. 5-8.)
On March 27, 2006, the petitioner's application was denied.
People v. Jones, 847 N.E.2d 380 (N.Y. 2006).  The petitioner did
not seek a writ of certiorari from the United States Supreme
Court and timely filed this habeas petition on December 29,
2006.

C.

Pursuant to the Antiterrorism and Effective Death Penalty
Act of 1996 ("AEDPA"), a federal court may grant habeas corpus
relief to a state prisoner on a claim that was adjudicated on
the merits in state court only if it concludes that the state
court's decision "was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined

by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2); see also Jones v. West, 555 F.3d 90, 96 (2d Cir. 2009); Hawkins v. Costello, 460 F.3d 238, 242 (2d Cir. 2006). "Clearly established federal law" refers only to Supreme Court "holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000); see also Bradley v. Burge, No. 06 Civ. 0040, 2007 WL 1225550, at *4 (S.D.N.Y. Apr. 19, 2007).  "A state court decision involves an 'unreasonable application of' clearly established federal law as determined by the Supreme Court when 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'"  West, 555 F.3d at 96 (quoting Williams, 529 U.S. at 413 (2000)).  An unreasonable application of federal law requires "[s]ome increment of incorrectness beyond error," but that "increment need not be great; otherwise, habeas relief would be limited to state court decisions 'so far off the mark as to suggest judicial incompetence.'"  Francis v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (quoting Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 889 (3d Cir. 1999) (en banc)); see

also <u>Jones v. Stinson</u>, 229 F.3d 112, 119 (2d Cir. 2000); <u>Ko v. Burge</u>, No. 06 Civ. 6826, 2008 WL 552629 (S.D.N.Y. 2008).

## II.

In this petition, the petitioner argues (1) that the People failed to prove the petitioner guilty of depraved indifference assault on Leon Burton, (2) that the trial court erred when it allowed the jury to reach its verdict before it responded to two jury notes, and (3) that the trial court erred in sua sponte dismissing a prospective juror.

As a preliminary matter, the petitioner has exhausted all three of these claims because they were each raised in state court both on direct appeal and in his application for leave to appeal to the New York Court of Appeals, and the respondent agrees.  The respondent argues that the petition should nonetheless be denied because all three of the petitioner's claims are both procedurally barred and without merit.

## A.

The petitioner first argues that the evidence adduced at trial was insufficient to prove depraved indifference assault on Leon Burton.  Specifically, the petitioner asserts that he was found liable under an accomplice liability theory, which required the People to prove that he acted in concert with Keenan to commit depraved indifference first degree assault with respect to Leon Burton.  According to the petitioner, there was

insufficient evidence that the petitioner aided Keenan.  He also argues that Keenan acted intentionally in shooting Leon Burton, not with the recklessness required for a depraved indifference charge, and thus the evidence was insufficient to sustain a finding that the petitioner was guilty of depraved indifference assault on an accomplice liability theory.

The petitioner's legal sufficiency claim is procedurally barred.  "Federal courts generally will not consider a federal issue in a case 'if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'"  Garvey v. Duncan, 485 F.3d 709, 713 (2007) (quoting Lee v. Kemna, 534 U.S. 362, 375 (2002)).  This rule applies whether the independent state law ground is substantive or procedural.  Id.  The adequacy of a state procedural bar is itself a question of federal law.  Lee, 534 U.S. at 375; Garvey, 485 F.3d at 714.  In determining whether a state procedural default is adequate to bar habeas review, this Court must decide "whether application of the procedural rule is 'firmly established and regularly followed' in the specific circumstances presented in the case, an inquiry that includes an evaluation of the asserted state interest in applying the procedural rule in such circumstances."  Cotto v. Herbert, 331 F.3d 217, 240 (2d Cir. 2003) (citing Lee, 534 U.S. at 386-87).  In certain limited, exceptional cases, however,

"even firmly established and regularly followed state rules will not foreclose review of a federal claim if the application of the rule in a particular case is 'exorbitant.'" Garvey, 485 F.3d at 713-14 (citing Lee, 534 U.S. at 376); see also Cotto, 331 F.3d at 239-40.

In Cotto, the Court of Appeals for the Second Circuit identified three considerations relevant to whether application of the firmly established and regularly followed state procedural rule would be exorbitant:

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

331 F.3d at 240 (citing Lee, 534 U.S. at 381-85).

Under New York Criminal Procedure Law § 470.05(2), an appellate court may decline to review claims if they were not preserved by being sufficiently presented to or decided by the trial court.[1] "[E]ven where a motion to dismiss for insufficient evidence was made, the preservation requirement compels that the

---

[1] The statute provides, in relevant part, that "[f]or purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same." N.Y. Crim. Proc. L. § 470.05(2).

argument be 'specifically directed' at the alleged error . . .
." People v. Gray, 652 N.E.2d 919, 921 (N.Y. 1995).  A
generalized motion to dismiss for insufficient evidence is not
enough to preserve a specific claim of error.  Id.; People v.
Flores, 803 N.Y.S.2d 85, 86 (App. Div. 2005); see also Brito v.
Phillips, 485 F. Supp. 2d 357, 361-63 (S.D.N.Y. 2007)
(collecting cases).

     At the close of the People's case, the petitioner's counsel
stated:  "As [to] the eighth count in the indictment, assault in
the second degree on the circumstances evincing . . . a depraved
indifference to human life, that my client recklessly engaged,
that has been not adduced at this count . . . ."  (Tr. 870-71.)
The petitioner never argued to the trial court, as he did on
appeal and here, that the evidence was insufficient because it
could only support a conviction for intentional assault and not
depraved indifference assault.  The Appellate Division held that
the petitioner's legal sufficiency claim was unpreserved because
his "motion for a trial order of dismissal was insufficiently
specific."  People v. Jones, 806 N.Y.S.2d 416, 416 (App. Div.
2006) (citing Gray, 652 N.E.2d at 919).  Here, the petitioner's
claim is procedurally barred because the Appellate Division's
rejection of his claim on appeal pursuant to § 470.05 is an

independent and adequate state law ground prohibiting collateral review.[2]

The Court of Appeals for the Second Circuit has clearly held that § 470.05(2) is a firmly established and regularly followed New York procedural rule.  See Garvey, 485 F.3d at 718. Moreover, the Appellate Division's application of the rule in this case was not exorbitant.

In Cotto, the Court of Appeals for the Second Circuit noted that the first consideration of whether the procedural violation was actually relied on in the trial court was less applicable in the case of a failure to make a contemporaneous objection "because the lack of a contemporaneous objection would not, almost by definition, be mentioned by the trial court."  331 F.3d at 242.  Therefore the lack of evidence that the trial court actually relied on the absence of a contemporaneous objection in this case does not weigh very heavily in the petitioner's favor.  See also Garvey, 485 F.3d at 719 ("It is . . . meaningless to ask whether the alleged procedural violation

---

[2]   The procedural default is based on an independent state ground despite the Appellate Division's alternative ruling on the merits that "[w]ere we to review this claim, we would find that the verdict was based upon legally sufficient evidence.  We also conclude that the verdict was not against the weight of the evidence.  The evidence established defendant's liability as a principal, which is all the People were required to prove." Jones, 806 N.Y.S.2d at 416 (citations omitted).  It is well-established that "a state court need not fear reaching the merits of a federal claim in an *alternative* holding" because the independent and adequate state ground doctrine "curtails reconsideration of the federal issue on federal habeas as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision."  Harris v. Reed, 489 U.S. 255, 264 n.10 (1989) (emphasis in original).

was actually relied on in the trial court-the violation only first occurred when defendant raised an argument on appeal that he had not raised earlier.")  Moreover, compliance with § 470.05(2) would have given the trial court an opportunity to correct the depraved indifference charge, a factor which therefore weighs against the petitioner.  See id.  If the petitioner were correct that he could not have been an accessory to Keenan's assault because of the intentional nature of that assault, the Court could have limited the depraved indifference assault charge to the petitioner's actions as a principal, which the Appellate Division found to be supported by the evidence.[3]

---

[3] The petitioner argues that the evidence was insufficient as a matter of law to prove that he acted in concert with another to commit depraved indifference assault on Leon Burton.  New York Penal Law § 20.00 requires an accomplice to act with the level of mental culpability required for the principal's crime.  See also People v. Kaplan, 556 N.E.2d 415, 417 (N.Y. 1990).  The petitioner argues that while he could have been found liable as an accomplice to intentional assault, he could not have been found liable as an accomplice to depraved indifference assault because Keenan, the alleged principal, plainly acted with intent and not depraved indifference.  See e.g., People v. Payne, 819 N.E.2d 634 (N.Y. 2004) (observing that "[f]iring more rounds or inflicting more wounds does not make the act more depravedly indifferent, but more intentional," and that "a one-on-one shooting . . . can almost never qualify as depraved indifference murder") (emphasis in original).

The petitioner's argument underscores the importance of the preservation requirement.  The Appellate Division found that the petitioner did not raise a sufficiently specific objection with respect to the evidence supporting the charge of depraved indifference assault on Leon Burton.  If the petitioner had raised a specific challenge to the sufficiency of the evidence for an accessory liability charge for the depraved indifference assault on Leon Burton, and if that challenge had merit, the trial court could have limited the charge to the petitioner's liability as a principal for the depraved indifference on Leon Burton.  The respondent argues persuasively that the trial court did give the jury the alternative of finding the petitioner liable as a principal, and the Appellate Division specifically found, in its alternative holding, that there was sufficient evidence that the petitioner was liable as a principal.  Indeed, the evidence was amply sufficient to find that the petitioner acted with depraved indifference when he shot into the group of fleeing men and struck Leon

The second consideration weighs strongly against the petitioner because New York courts regularly demand compliance with the preservation requirement in similar circumstances.  See id.  The third consideration also does not favor the petitioner. Just as in Garvey, the defendant did not simply violate the "formal requirements" of the rule, but "the very substance" of the rule.  Id. at 720.  The petitioner's objection did not put the trial court on notice that the petitioner was objecting to sufficiency of the evidence showing that Keenan had the requisite mens rea of depraved indifference, for which the petitioner could be charged as an accessory.  As the Court of Appeals for the Second Circuit has observed, "demanding compliance with § 470.05(2) serves a legitimate governmental interest . . . in allowing the trial court to have the first opportunity to rule on and possibly rectify any alleged legal error."  Id.

Nor can the petitioner overcome the procedural bar of his failure to preserve his claim by showing cause and prejudice, or a fundamental miscarriage of justice.  Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can

---

Burton, and that the bullets that struck Leon Burton caused him serious physical injury.  Any defect in supporting the accessory liability charge to the jury could have been addressed by the trial court, but the petitioner failed to make a specific objection.

demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991).

Here, the petitioner has not demonstrated cause for his failure to preserve his legal insufficiency claim.  The petitioner does not present any arguments to explain his counsel's failure to object with specificity, nor is any justification evident from the record.  Nor does the petitioner raise an ineffective assistance of counsel claim.  "In the absence of a constitutional violation, the petitioner bears the risk in federal habeas for all attorney errors made in the course of the representation . . . ." Coleman, 501 U.S. at 754. The petitioner's failure to show cause for not raising a sufficient contemporaneous objection is fatal to his claim.  See Levine v. Comm'r of Corr. Servs., 44 F.3d 121, 127 (2d Cir. 1995) (declining to address prejudice requirement after concluding that petitioner had failed to show cause); Stepney v. Lopes, 760 F.2d 40, 45 (2d Cir. 1985).  Likewise, the petitioner has not demonstrated that a fundamental miscarriage of justice occurred because he does not argue that he is actually or factually innocent.  Therefore, the petitioner's legal

sufficiency claim fails because it is procedurally barred, and his application for habeas relief on this basis is **denied**.

**B.**

The petitioner next argues that the trial court erred when it allowed the jury to deliver the verdict before responding fully to the two jury notes sent to the court.  The jury delivered the first note ("Note 4") to the court at 10:20 am on June 18, 2004, the second day of deliberation.  (Tr. 1410.)  In the note, the jury requested that it be excused by 1:30 p.m. (Tr. 1410-11.)  Before the court responded, the jury then delivered a second note ("Note 5") at 10:39 a.m. requesting the sworn testimony of Leon Burton and William Livingston.  (Tr. 1411.)  While the court reporter was gathering the testimony, and before the court had a chance to respond to Note 5, the jury informed the court at 11:04 a.m. that the jury had reached a verdict.  (Tr. 1411.)

Before the jury was brought into the courtroom to deliver the verdict, the court informed defense counsel of the three notes and their contents and asked counsel if they wished to be heard before bringing out the jury and taking the verdicts. (Tr. 1410-11.)  Defense counsel replied, "Nothing to say, Judge. They said they have verdicts."  (Tr. 1411.)  Likewise, the prosecutor answered, "Nothing."  (Tr. 1411.)

The petitioner argues that it was error for the trial court to have taken the verdict before responding to the jury's earlier notes.  The Appellate Division found that the petitioner's argument was unpreserved.  <u>Jones</u>, 806 N.Y.S.2d at 416.  As to the merits of the petitioner's claim, the Appellate Division further noted that the claim would be rejected on the merits if that question were reached.  <u>Id.</u>

The petitioner's argument is both procedurally barred and without merit.  As the New York Court of Appeals has explained, a claim becomes procedurally barred when "defense counsel was given notice of the contents of the jury notes and had knowledge of the substance of the court's intended response." <u>People v. Starling</u>, 650 N.E.2d 387, 391 (N.Y. 1995).  In these situations, "counsel's silence at a time when any error by the court could have been obviated by timely objection renders the claim unpreserved and unreviewable here." <u>Id.</u>; <u>see also</u> <u>Barrios v. Bennett</u>, 23 Fed. Appx. 24, 25 (2d Cir. 2002).  Moreover, the failure to object in a timely manner, absent a demonstration of cause for the default and actual prejudice, neither of which the petitioner shows here, is an adequate state procedural grounds to bar federal habeas review.  <u>See</u> <u>Coleman</u>, 501 U.S. at 750; <u>Garcia v. Lewis</u>, 188 F.3d 71, 79-82 (2d Cir. 1999).

Here, the petitioner was made fully aware of the two notes by the court, and was explicitly invited to comment.  In

choosing not to object at that time, petitioner's counsel made the strategic decision to wait to hear what the verdict would be and thus failed to provide the trial court with an opportunity to correct its alleged error.  Cf. United States v. Young, 140 F.3d 453, 456-57 (2d Cir. 1998) (finding no reversible error where defense counsel failed to object to receipt of a verdict or to request further inquiry when the court did not have adequate time to respond to a jury note before the jury indicated that it had reached a verdict and the court received the verdict).  Thus, the petitioner's claim with respect to the jury notes is procedurally barred.

The petitioner's claim is also not a basis for habeas relief.  A trial court's failure to respond to jury inquiries in whole or in part may, in some cases, be error.  See, e.g. United States v. Bolden, 514 F.2d 1301, 1309 (D.C. Cir. 1975); United States v. Jackson, 257 F.2d 41, 43 (3d Cir. 1958).  However, where defense counsel accedes to having a verdict announced rather than requesting the court to respond to a recently-made jury request, a trial court's decision to proceed to the verdict instead of responding to the jury's request is not contrary to clearly established federal law.  See Young, 140 F.3d at 456-57. The petitioner's request for habeas relief based upon the trial court's failure to respond to the two jury notes before accepting the verdict is therefore **denied**.

C.

Finally, the petitioner argues that the trial court erred
in sua sponte dismissing a Spanish-speaking prospective juror
for cause during voir dire because the prospective juror
expressed some difficulty in responding to the court's
questions.  Upon being asked if she could give the defendant a
fair trial, she appeared to struggle to understand the court's
question:

> THE COURT:  Can you give us a fair trial?
>
> A PROSPECTIVE JUROR:  Excuse me?
>
> THE COURT:  Can you give us a fair trial?
>
> A PROSPECTIVE JUROR:  Address?
>
> THE COURT:  Can you give us a fair trial?  Could you be
> fair?
>
> A PROSPECTIVE JUROR:  Oh, yes.

(Voir Dire Tr. 103-04.)  After the court commented on the
importance of bilingual members of the community participating
as jurors, he asked the prospective juror if she thought she
would be a good juror.  (Voir Dire Tr. 104.)  The prospective
juror answered, "depends."  (Voir Dire Tr. 104.)  Before the
prospective juror could explain her answer, the court
interrupted:  "I am going to excuse you.  This is too important
a case.  All right, you can go downstairs."  (Voir Dire Tr. 104-

05).  The petitioner's counsel imposed no objection to excusing the juror.

The petitioner's claim is again procedurally barred.  A defendant's failure to object contemporaneously when a trial court excuses a juror precludes the defendant from arguing on appeal that the court committed error in excusing the juror. See People v. Toussaint, 837 N.Y.S.2d 218, 219 (App. Div. 2007) (holding that the defendant's claim that trial court erred in discharging jurors before formal voir dire was unpreserved for appellate review because the defendant failed to object prior to the discharge of the jurors); People v. Beniquez, 699 N.Y.S.2d 878, 878 (App. Div. 1999) (holding that defendant's claim that the trial court failed to conduct a sufficient inquiry of an allegedly unqualified prospective juror was unpreserved for appellate review).  Because the petitioner does not demonstrate cause for the default or actual prejudice, the contemporaneous objection rule is an adequate state procedural bar.  See Coleman, 501 U.S. at 750.

Petitioner's claim also would not support granting habeas relief.  The Supreme Court has instructed that in reviewing a state trial court's voir dire, a federal court's role is "limited to enforcing the commands of the United States Constitution." Mu'Min v. Virginia, 500 U.S. 415, 422 (1991). Consequently, "a great deal must, of necessity, be left to [the

21

trial court's] sound discretion." Id. (quoting Connors v. United States, 158 U.S. 408, 413 (1895)). A trial judge's discretion, either sua sponte or upon motion, to dismiss prospective jurors for cause is committed to the sound discretion of the court. United States v. Torres, 128 F.3d 38, 43 (2d Cir. 1997).

In this case, the trial court put the question of whether she could give the petitioner a fair trial to the prospective juror several times. After receiving several unsatisfactory responses, and apparently concluding that the prospective juror would be unable to serve because of language difficulties, the trial court used its discretion to dismiss the juror for cause. The trial court's discretionary decision to excuse the prospective juror because of her apparent difficulty understanding English was not contrary to clearly established federal law. See Mitchell v. Herbert, No. 97 Civ. 5128, 1998 WL 186766, at *3 (S.D.N.Y. Apr. 20, 1998) ("[T]he trial court did not abuse its discretion here in dismissing *prospective* jurors who had difficulty understanding the English language . . . .") (emphasis in original). Habeas relief based upon the petitioner's argument that the trial court erred in excusing the prospective juror is therefore **denied**.

## CONCLUSION

For the reasons explained above, the petitioner's motion pursuant to 28 U.S.C. § 2254 is **denied**. The Clerk is directed to enter judgment dismissing the petition and closing this case.

The Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) because the petitioner has failed to make a substantial showing of the denial of a constitutional right.

**SO ORDERED.**

Dated:     New York, New York
           July 27, 2009

                                        John G. Koeltl
                                United States District Judge

23